**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joshua J. ROBERTS, Defendant–
Appellant.**

No. 02–5471.

United States Court of Appeals,
Sixth Circuit.

May 2, 2003.

474

Before MOORE and ROGERS, Circuit Judges; and KATZ, District Judge.*

### ORDER

Joshua J. Roberts appeals the sentence imposed upon his convictions. The parties have expressly waived oral argument, and upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

■ In the process of delivering Girl Scout cookies for his mentally-handicapped adult stepdaughter, Roberts acquired a savings account transfer slip and two blank starter checks from a 75 year-old woman with Alzheimer's Disease. Roberts used these documents to defraud Bancorp-South Bank of $133,000.

On May 22, 2000, Roberts was charged by information with two counts of bank fraud in violation of 18 U.S.C. §§ 1344 and 2. He waived indictment by a grand jury and pleaded guilty to both counts on the following day, pursuant to a written plea agreement. The initial presentence investigation report (PSR) calculated Roberts's guideline range for imprisonment as 33 to 41 months. When Roberts then failed to appear for sentencing, the government revoked its plea agreement. Roberts ultimately was apprehended in February of 2002, while driving a stolen car in Arkansas. A revised PSR was prepared, which deleted a previous reduction for acceptance of responsibility, added an enhancement for obstruction of justice, and calculated Roberts's criminal history category as V. At sentencing, the district court departed upward to the next criminal history category, VI, because it concluded that Roberts's criminal history category under-represented the seriousness of his criminal history. The district court sentenced Roberts to 78 months in prison, 3 years of supervised release, a $200 special assessment, and $64,483 in restitution.

Roberts first argues that the facts of the case as a whole did not merit an upward departure, but instead merited a downward departure and adjustment for acceptance of responsibility. After Roberts absconded, counsel filed objections to the PSR, requesting the adjustment for acceptance of responsibility in spite of Roberts's flight, opposing the upward departure recommended in the PSR, and noting that Roberts had been working on making restitution and was receiving prostate cancer treatment which caused mood alterations. At sentencing, counsel asked the court to consider Roberts's age (now 67), his health, remorse, and desire to make restitution. The district court instead departed upward and stated that its reasons were Roberts's remarkable number of past convictions which could not all be assessed criminal history points, an old unresolved probation violation, and the nature of this particular crime. On appeal, counsel again argues that the aforementioned factors merited a lighter sentence. Counsel relies on *United States v. Bennett,* 975 F.2d 305 (6th Cir.1992), to argue that the district court should not have based an upward departure on Roberts's criminal acts which were outside the relevant time period.

This court reviews for an abuse of discretion a district court's decision to depart upward from the applicable sentencing guideline range. *See Koon v. United States,* 518 U.S. 81, 82, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *United States v. Barber,* 200 F.3d 908, 912 (6th Cir.2000). A court may depart from the guideline range

---

* The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

where "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). A district court "is required to consider the particular factors of the case as a whole, and any combination thereof," in determining whether a departure is warranted. *United States v. Coleman*, 188 F.3d 354, 362 (6th Cir.1999). The guidelines encourage departure in certain cases, such as where the "criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." USSG § 4A1.3; *see also Barber*, 200 F.3d at 912. But "upward departures ... for reasons of recidivism should be rare events." *Bennett*, 975 F.2d at 309.

The district court did not abuse its discretion by departing upward to criminal history category VI. The PSR listed convictions occurring approximately every few years starting in 1951 and continuing until the present. There were numerous convictions for forgery as well as other crimes such as theft, escape, burglary, false pretenses, and fraudulent use of a credit card. Many of these convictions were not factored into Roberts's criminal history score because of their age. For this reason, Roberts was not assessed points for a 1989 conviction even though Tennessee considered Roberts to still be on probation as he had absconded in 1991. The guidelines also did not permit assessing points for Roberts's plethora of arrests for similar crimes which did not result in known convictions, or for a 1993 criminal complaint stating that Roberts was suspected of scamming at least four people who were in their seventies. Thus, the seriousness of Roberts's criminal past and the likelihood of recidivism were not adequately reflected in his criminal history category, and the

extensiveness of Roberts's criminal history is sufficiently atypical to justify the upward departure. In contrast, no downward departure was justified as defense counsel did not present any argument as to why Roberts's age merited a lesser sentence and as counsel also failed to present sufficient evidence to convince the district court that Roberts in fact had prostate cancer. Accordingly, the district court did not err by implicitly concluding that the totality of the circumstances merited an upward, rather than a downward, departure. *See United States v. Aymelek*, 926 F.2d 64, 70 (1st Cir.1991). Additionally, no reduction for acceptance of responsibility was warranted in light of the obstruction of justice enhancement and lack of extraordinary circumstances. *See* USSG § 3E1.1, comment. (n.4).

■ Roberts next argues that the district court judge exhibited personal bias and should have sua sponte recused himself pursuant to 28 U.S.C. § 455. Roberts contends that the judge exhibited bias at sentencing by commenting, for example, that Roberts was a "con man" and "I have seen armed robbers who were less cruel." Roberts asserts that the comments show bias in favor of Girl Scouts, mentally handicapped adults, and elderly ladies. Counsel did not object to the comments at sentencing.

Where a party fails to object to the trial court's allegedly prejudicial conduct at sentencing, this court reviews for plain error. *United States v. Middleton*, 246 F.3d 825, 849 (6th Cir.2001).

Section 455(a) provides that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." A conviction will be reversed on the basis of judicial bias "only if the record discloses that the

judge was actually biased or the judge's remarks projected the appearance of advocacy or partiality." *Mitchell v. Kirk,* 20 F.3d 936, 937 (8th Cir.1994). Furthermore,

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). A judge is not recusable for bias merely because he is exceedingly ill disposed to a defendant who has been shown at trial to be a thoroughly reprehensible person. *Id.* at 560–61.

No error occurred. The district court judge's remarks would not have led a reasonable, objective person to question the judge's impartiality as the remarks did not display a deep-seated antagonism rendering a fair judgment impossible. At most, the remarks indicated that the judge was ill disposed to a defendant who had been shown during criminal proceedings to be a thoroughly reprehensible person.

Accordingly, the district court's judgment is affirmed.